Gaston, Judge,
 

 after stating the case as above, proceeded as follows: — It is insisted, on the part of the plaintiff, that the clearing of woodland is in itself waste; and that the only exception to this general law is when such clearing is
 
 necessary
 
 for the useful enjoyment of the land by the tenant for life.. We are of opinion, that this position is laid down too broadly. According to the adjudications in this state, and in most of the states of the union, the cutting down of timber is not waste, unless it does a lasting damage to the inheritance, and deteriorates its value; and not then, if no more was cut down than was necessary for the ordinary enjoyment of the land by the tenant for life.
 
 Shepard
 
 v.
 
 Shepard,
 
 2 Hay. 382;
 
 Ballentine
 
 v.
 
 Payner,
 
 Ibid. 111;
 
 Jackson
 
 v.
 
 Brownson,7
 
 Johnson’s Rep. 227;
 
 Owen
 
 v.
 
 Hyde,
 
 6 Yerger’s Tenn. Rep. 334. While our ancestors brought over to this country the principles of the common law, these were nevertheless necessarily accommodated to their new condition. It would have been absurd to hold that the clearing of the forest, so as to fit it for the habitation and use of man was waste. And at this day, when a large proportion of out-lands is yet wild, the reduction of part of a tract to an arable state may be highly beneficial to the owner. Whether it has been beneficial or injurious to him, is a question of fact, which must depend on the relative proportion of the cleared to the woodland, on the comparative value or worthlessness of the trees destroyed, and on the ordinary use made of the trees in the part of the country where the land is situated.
 

 It is not shown, in this case, that the trees cut dowm by the defendant were valuable for sale, or for any other pur
 
 *633
 
 poses, than for the support of the plantation ; nor that a deficiency was thereby caused of timber sufficient for its permanent support after it should come into the possession of the plaintiff. The exception to the general law of waste, as above laid down, owes its origin also to the usages of the country, and to the necessities of widows— the most frequent tenants for life that we have amongst us. The provision for life was regarded as designed for their support; and such an use of the land as was necessary for that support, and as prudent proprietors were accustomed to make of their own, was deemed to have been intended in the provision; although the value of the estate might be somewhat impaired thereby.
 

 Permitting cleared land to grow up in secondary growth is not waste.
 

 We hold also, that the turning out of exhausted lands is not waste. An improved system of agriculture has commenced with us, which we hope will in time supersede the present slovenly, and as it respects the country at large, injurious course of husbandry. But as yet the usage is almost universal, of cultivating the cleared land until it is worn out, permitting it to rest, and grow up with pines and scrubby oaks, in order to shield it from the sun, and return by their straw and leaves a portion of the fertility it once possessed ; and clearing new ground to supply the place of that given back to nature. While the tenant for life observes the usual course of husbandry of the country, and does no permanent injury to the estate of him in remainder, such tenant ought not to be deemed guilty of legal waste.
 

 The bill is dismissed; but the Court does not consider this a case in which to decree costs to the defendant.
 

 Pbu Curiam. Decree accordingly.