MARY C. KING and others v. SUSAN MILLER and others.

*Dower— Waste.*

1. In an action of waste, it is not error to permit the defendant, a life tenant, to prove that the usage, in that part of the country in which the premises are situate, was to treat and manage lands of the character of that in controversy in the manner in which defendant had treated the *locus in quo.* (2) Nor is it error to permit a farmer of the vicinity to testify that, in his opinion, the defendant had done no more (in the nature of waste) than was necessary to make a living out of the land. Such evidence being competent to repel a charge of reckless and wanton misuse of the premises.

2. A dowress may use, and also *sell*, fallen or dead trees, as the use of such belongs to her, and does not, in law, impair the inheritance. She may clear for cultivation as much of the land as a prudent owner of the fee would do, and sell the timber cut in doing so. In clearing land, she must have due regard to the proportion of wooded and cleared land on the dower.

3. While, in its essential elements, waste is the same in this country and in England, being a spoil or destruction of houses, trees, &c., to the permanent injury of the inheritance; yet, in respect to *acts which constitute waste*, the rules are not the same. Here, an act is not *waste in law* which is not *waste in fact*. The real and important enquiry, in such cases, is, has the land been abused, during the life tenant's occupancy, by a spoliation unwarranted by the usage of prudent husbandmen in respect to their own property, to the impairment of it, as a whole, in value?

CIVIL ACTION, tried before *MacRae, J.,* and a jury, at Fall Term, 1887, of MECKLENBURG Superior Court.

Judgment for defendants; plaintiffs appealed.

A. C. Miller died, intestate, in the year 1865, possessed of an estate in fee of lands, out of which the defendant Susan Miller has, by proper proceedings, caused a portion, consisting of a tract of 250 acres, and a small lot of 2½ acres, as described in the complaint, to be assigned to her as dower. The reversion in the lands, so set apart, has descended to the plaintiffs, and the defendants, associated with the said Susan because they refused to join in the action, as tenants in common. The plaintiff M. C. King added to her share by taking a conveyance of the share of A. C. Elwood, one of the heirs to whom the inheritance descended.

The complaint alleges the commission of waste upon the premises, by the life tenant, in cutting down, for the purpose of sale and selling, large numbers of valuable trees, oak, hickory, pine and other wood, for timber and fire-wood, and in other ways, specified therein, greatly damaging the inheritance, and concludes by demanding the possession of the land wasted, and $500 for the damage done thereto.

The defendant Susan, admitting the title to be, as alleged by the plaintiffs, in them, and in the other defendants, in undivided parts, denies the charge of waste, and the owners, made defendants, make no answer to the complaint.

Two issues were submitted to the jury:

1. Did the defendant Susan Miller commit waste upon the lands described in the complaint?

2. What damage, if any, have the plaintiffs sustained by reason thereof?

To the first inquiry, the jury responded in the negative, and no answer was returned to the other.

The testimony of the witnesses is set out in full in the case on appeal, and we deem it necessary to reproduce, in condensed form, so much of it as tends to show the acts of the tenant in dower, in which the waste is alleged to have been committed, and illustrative of the charge complained of, and to present the exceptions to the rulings upon questions of evidence.

One McLure, for the plaintiffs, testified that, at the intestate's death, in 1865, he had from 80 to 100 acres in cultivation, and since, from 20 to 30 acres had been cleared; that there was considerable wood—pine, oak and hickory—on the tract; that some of the open land was in good farming condition, other parts pretty well worn-out and thin; that John Hunter and John Deaton cut saw-logs, most of them from dead wood; that witness has seen several persons hauling wood to town; that the woodland, adjoining that belonging to witness, was pretty heavily timbered, but most of the saw-logs were taken off by Hunter; that a small piece of meadow, laid off for dower, of three or four acres, two acres of which had timber on it, has been ditched and planted in corn, and is now in very good condition; that the intestate had a large body of land, besides that assigned in dower, much of which was thin and began to wear out, and some he had turned into pasture; that the land, abandoned by the defendant as worn-

out, has grown up in timber and improved; that she has turned out land as it became impoverished, and has cleared other land, and done no more in this direction than was necessary to make her a comfortable living; that considerable improvement, requiring the use of timber, has been put on the place; that the saw-logs cut were of scattering pine, and the oak timber is there yet; that the meadow was very wet—kept for mowing by the deceased—and witness cannot say that it is not worth as much now as before the clearing; that it is a custom among farmers to clear more land, as that in cultivation was worn out, but this depends upon the amount of timbered land on a farm, and that cutting out timber trees gave the young timber greater facilities for growth.

The defendant objected to the testimony, as to the usage in that part of the country, to turn out worn-out and impoverished lands, and replace them with new clearings; but it was admitted, and to this ruling the first exception is taken.

John Henderson swore that good crops were made by the deceased on the land where his widow now lives; that part of the place was very good—part broken—farm on an average in good condition; fences in repair; a forest in oak, hickory, and old field pine, over 100 acres, and about 60 acres of it kept in forest; that stock timber has been cut on both north and south ends of the tract; that some 30 acres have been cleared since A. C. Miller died, and this generally yields 30 cords to the acre.

The witness thinks the removal of the timber trees from the meadow has lessened its value by ten dollars, but it brings as fine corn as any land in that country, and says that the deceased had the farm in possession some seventeen years, and had, himself, thrown out, as unfit to cultivate, 7 or 8 acres, some of it having been tended apparently fifty years; that the defendant has kept up the premises, not, however, in the state in which her husband kept them; has

moved old houses, but built no new ones, and these are getting old and in decay, and the fences have all gone down under the stock law.

Other witnesses were examined by the plaintiffs, and gave substantially similar testimony, one of whom stated, that the prevalent custom was to get fire-wood where it was found; that it was good husbandry to cut out dead wood, and that farmers were in the habit of throwing out land when worn-out, and taking in more, but that the practice "has gradually passed off since the war."

The defendant then proposed to show, that this witness was a farmer, living in that vicinity, and that, in his opinion, the defendant had done no more than was necessary to make a living out of the land.

Objection thereto was overruled, the evidence admitted, and to this the second exception was taken.

The testimony for the defendant, in substance, was to this effect:

One Henderson, who lives near the land, and has long known it, testified to the intestate's manner of farming, and his habit of abandoning land when reduced to sterility and unfit to tend, and clearing and opening fresh land. and such is the general custom; that when turned out, such exhausted fields grow up in pines, and recuperate materially, as is the case here; that this was necessary to make a subsistence, and that the work done on the meadow has rendered it more valuable.

Captain Orr, a farmer and cropper for 21 years, went upon the land in 1866, and found some of it very good upland; same tract, bottom of no account; fair crops could be made by manuring; and when the land was too impoverished to pay, it was left out and other taken in; cleared the plantation as far as needed, and what was not needed, hauled to town and sold; about 30 acres taken in, and from 40 to 60 acres left out. The clearing was necessary for a support to

defendant and her tenants, and to carry on farming opera-
tions　Of the part thus abandoned, the growth of pines on
it has improved it very much, and increased its value, and
such has been the effect of work upon the meadow; good
stocks never hauled away by her and Hunter, who sawed
and hauled; hauled defendant's part back, and when needed,
we would borrow from him, and repay by letting him get
saw stocks; one-fourth taken for the timber, and none of it
sold; fire-wood in summer obtained by picking up poles and
dry wood; in winter, solid wood was used, and trees would
be felled when the tops were dying. ·

He further testified, that some fire-wood has every year
been sent to town for sale; that is, once in awhile, and some-
times wood from cleared land, not used on the premises, was
sold by tenants.

The defendant testified for herself, similarly, about the
abandoned and cleared parts of the farm, and that it was
necessary for her to get a support; that she never sold any
stocks of her lot, but used them on the premises for house,
farm, paling, &c.

Upon her examination, her counsel proposed to prove that
she sold the meadow tract some four or five years ago to one
Hunter, but made no deed, nor was there any writing about
it.

The plaintiff objected on the ground, that title would not
pass, nor could a deed be spoken of, without its being pro-
duced. The evidence was received, and the exception to the
ruling is the third in the series.

It is not necessary to recite the additional testimony, to
present the erroneous rulings assigned, as it is of the same
kind as that set out, and concurrent in general tenor with it,
and we proceed to state them:

Among other instructions, prayed by plaintiffs, were the
following:

1. That if the jury believe the evidence in the case, they will respond to the first issue, " Yes."

2. That if she (the defendant) allowed any fire-wood to be cut on the place for market, and solely for the purpose of profit, she committed waste, and the jury will answer the first issue, " Yes," and assess as damages such amount as will be a fair and reasonable compensation for the injury to the inheritance.

3. That if defendant Susan Miller converted meadow into arable land, or cultivated land, she was guilty of waste, and the jury will respond to the first issue, " Yes," and assess the damages in an amount sufficient to cover the injury done to the inheritance thereby.

The Court declined to give the instructions as prayed, but gave the following instructions:

The plaintiffs, who are some of those who are the owners of the inheritance, sue Mrs. Miller, the defendant who has had her dower in this tract of land laid off to her, and others of the heirs, who refuse to join in this action against the dowress, are made defendants. The charge is, that she has cut saw-logs, a quantity of timber, oak, hickory, pine and other wood, for timber and fire-wood, and sold it; that she has cleared a large amount of woodland and turned it into cultivated fields, when there was already a sufficient quantity of arable land open to support her; that she has caused meadow land to be converted into cultivated fields, and that she has permitted other land, that was in cultivation, to grow up in shrubs, bushes and trees, and become wasted.

The first inquiry for you is, whether she has committed waste.

That is, has she unnecessarily cut down, or destroyed the timber, when there is already sufficient cleared land for her to cultivate; or has she permitted the cultivated land to 'be injured, by growing. up in bushes, trees, etc.; or has she

changed, or permitted to be changed, meadow lands into
cultivated fields, to the injury of the inheritance?

The tenant in dower is entitled to take off from the land
such timber as may be necessary to keep the houses and
fences, the wagons and other farming implements, such as
plows, in good repair, and to make such things as may be
necessary for the use of the farm; and she would be entitled
to make such a bargain with the saw-mill men as was the
usual and customary terms, upon which one can deliver so
many saw-logs and get so much lumber in return. She is
entitled to clear land for cultivation, if necessary to the en-
joyment of the estate and a sufficient proportion of wood-
land is left, and if, in clearing such land, there is more fire-
wood than she needs, she may sell it; she may not, however,
sell that wood and cut other wood for her own use. It is
not waste to permit cleared land to grow up in secondary
growth, unless it works an injury to the inheritance. It is
not waste to change a meadow into a cultivated field, pro-
vided it works no injury that is lasting damage to the in-
heritance. It is not waste to take all necessary wood for the
use of the farm.

What is waste in cases like this, is a question which must
be largely left to the discretion of the jury, upon the evi-
dence. Did she take any more timber off the land than
was necessary? Did she clear up more land than was nec-
essary for her enjoyment of the life tenancy, and if she did,
did she do lasting damage to the inheritance thereby? If
the turning out of cultivated land, and allowing it to grow
up in secondary growth, has the effect to make the land
more valuable than it was before, it was no injury to the
inheritance, and was not waste. If the meadow land was
made more valuable by turning it into a corn and cotton field,
it was not waste.

If she took no more timber than was necessary for the use

of the place, she had a right to use the tops of the trees, and she need not let them lie there and rot, but may sell them.

She might take the dead wood and the dying trees for fire-wood, and if there was not enough of that kind of wood for her own use, she had a right to cut green wood suitable for fire-wood. She might sell the dead wood, or if she cut down a dying tree, she might sell it. But she had no right to cut down trees for fire-wood or for timber and sell them; and if you find that she cut timber which was not necessary for the repairs of the houses, fences, wagons, and other farm stock, or if she cut green wood, not necessary for use, as fire-wood, or other farm purposes, it is waste, whether she sold it or not. If she caused timber trees to be cut down, and, by a miscalculation, there was a small amount over what was necessary for her use, and she received pay in money for it, this would not be waste.

Now, you are to consider all the testimony, and say, upon these instructions, whether she has committed waste. If you say no, you need not consider the other issue. If you say yes, you will proceed to inquire, what damages they have sustained. The damages would be the value of the wood or timber sold, or of the injury done to the inheritance, by turning out land, or by clearing land. You will ascertain the amount of the injury in money.

The plaintiffs assign the following errors:

1. That his Honor instructed the jury, "That if the meadow land was made more valuable by turning it into a corn and cotton field, it was not waste."

2. That his Honor instructed the jury, that the widow had the right to sell the tops of the trees, cut for timber for the use of the premises.

3. That his Honor instructed the jury, that the widow had the right to cut the dead wood, or dying trees, into fire-wood and sell the same.

4. That his Honor instructed the jury, that if the widow caused timber trees to be cut down, and, by a miscalculation, more was cut than was necessary for her use, she might sell the excess, and use the proceeds of the sale.

5. That his Honor charged the jury, that the widow would have the right, in law, to sell the wood cut from the land, not for the purpose of clearing, in excess of what was needed as house-bote, or fire-bote, or other farm purposes.

6. That his Honor charged the jury, that the widow would be entitled to use for her own gain and profit, the wood cut from the land in clearing.

7. That his Honor charged the jury, that the widow would be entitled to make such a bargain with the saw-mill man as was the usual and customary terms, upon which one can deliver so many saw-logs and get so much lumber in return ; in other words, that the widow could pay for cutting, hauling and sawing, or any such services needed by her, by giving a part of the stock so cut, hauled and sawed.

8. That the charge of his Honor, with reference to the right of the widow to sell wood cut from the land not for the purpose of clearing, is inconsistent, and was calculated to mislead the jury, as to the law governing the case.

9. That his Honor refused the instructions which the plaintiffs requested him to give the jury.

10. That his Honor admitted testimony over the objection of plaintiffs, which was incompetent or irrelevant, as appears from plaintiffs' exceptions already noted.

*Mr. P. D. Walker*, for the plaintiffs.
*Mr. C. N. Tillett*, for the defendants.

SMITH, C. J , (after stating the facts).    1st Exception.—We do not see the force of an objection to an inquiry into the use made of the life estate in an issue as to waste, and in showing that the method of cultivation follows the practice

and has the sanction of good farmers, and hence there has been no mismanagement or needless injury to the land, for which the defendant is accountable to the successors to the estate for actionable spoliation of the premises.

2d Ex.—The exception next taken, and alike untenable, is, to evidence offered to repel the charge of a wanton and reckless misuse of the premises, and that the tenant only derived her support from the land, the very purpose for which the law gave it to her, to be enjoyed while living.    This will find a fuller explanation in the examination of the law defining the limits to which the law permits the tenant in dower to go in the use of her estate.    If there were grounds of objection to the evidence, it is rendered harmless, by the instructions given to the jury, for their guidance, afterwards.

3d Ex.—The pertinency of the proof of a verbal disposition made of the three acres specified, some few years previous to the matter in controversy, is not apparent, and the reasons for opposing its reception are still less so.    The attempted sale amounts to nothing, and proves nothing of injury or advantage, so far as we can see, to either party.

And what force is there in the objection, that a writing was necessary to give any efficacy to the transaction, and itself was the best evidence of its existence and terms, when there was no writing or deed to produce ?    We presume the exception is not properly set out in the transcript.

These exceptions disposed of, we come to the consideration of those that grow out of the instructions asked and refused, and such as are entered to the charge of the Court.

1st Instruction asked.—This could not be given without invading the province of the jury, to pass upon the testimony and ascertain what is proved by it, thus withdrawing the case altogether from their consideration and action.

2d Inst. asked.—This involves an erroneous statement of the law, for the life tenant may use, and dispose of as well,

38

fallen or dead trees on her dower, for fire-wood, or other purpose, as the use of such belongs to the dowress, and does not in law impair the inheritance.

3d Inst. asked.—The negation of the proposition in law, contained in the third exception, was proper for the same reason, the tenant not being absolutely under such instructions, such an act not being *waste in law*, when not *waste in fact*, as applied to the condition of the country, unless attended with injury and damage to the estate in remainder or reversion belonging to others. While, in its essential elements, waste is the same in this country and in England, being a spoil or destruction in houses, trees, and the like, to the permanent injury of the inheritance, yet in respect to *acts which constitute* waste, the rule that governs in a new and opening land, covered largely with primeval growth, must be very different. Where the proportions of arable and woodland are adjusted to give the greatest value to the farm in its present condition, a conversion of one kind into another may be in itself a waste committed, while here the clearing of the forest growth and fitting the virgin soil, which it covers, for cultivation, which is ordinarily an improvement, most valuable to the property, and is not, nor can it be, injurious to the succeeding estate in fee. In the full and clear exposition of the law, as applied to limited estates, (and the cases decided are mostly cases of dower,) held in this State in general, we give our approval, as warranted by previous adjudications, in adjusting the relative rights subsisting between the tenant for life and the tenant in remainder or reversion.

In an early case, *Ballentine* v. *Poyner*, 2 Hay., 110, HAYWOOD, J., says: "I would define waste thus—an unnecessary cutting down and disposing of timber, or destruction thereof, upon woodlands, where there is already sufficient cleared land for the widow to cultivate, and over and above what is necessary to be used for fuel, fences, plantation utensils, and the like," adding, however, that if the lands are covered

with trees, such as juniper swamps, and can be put to no other use, and have value only in the growth upon them, then "the widow shall not be liable for waste for using such timber, according to the ordinary use made of the same in that part of the country." To which it may be proper to fix a limit to the denudation, that it do not exceed the annual increase from natural growth, which replaces that portion of the trees removed.

In *Ward* v. *Sheppard*, in the same volume, at page 283 (461), JOHNSTON, J., says: "that waste in this country is not to be defined by the rules of the English law in all respects, for cutting timber trees for the purpose of clearing the lands was not waste here, though it was so in England," but if the trees were cut for sale, this would be waste, and that "what shall be deemed waste, must be, in a considerable degree, in the discretion of the jury, upon evidence."

In *Parkins* v. *Coxe*, reported in same volume, 339 (517), TAYLOR, J., announces the same rule as to cutting timber for other uses than repairs, and extends it to collecting and burning lightwood to make tar for sale, as a permanent injury, that would take several years to replace.

In *Sheppard* v. *Sheppard*, reported in same book, 382 (580), HALL, J., after examining numerous authorities cited by counsel, declares the law to be, that where "waste of insignificant value is *done scatteredly* through a whole tract," the proposition, that the widow must lose the place wasted, is "too heavy a penalty, when the damage is to the amount only of a small sum," and that should be deemed to be waste only, "which is *substantially an injury to the inheritance.*"

These rulings, early made, have laid the foundations of the law on the subject of waste, as it declares and regulates the relations between the owners of the separate estates, and it has been developed in the same direction in subsequent cases. Thus it is declared by the Court, GASTON, J., delivering the opinion, in *Shine* v. *Wilcox*, 1 D. & B. Eq., 631, that

"the cutting down of timber is not waste, unless it does a lasting damage to the inheritance, and *deteriorates its value;* and *not then, if no more was cut down than was necessary for the ordinary enjoyment of the land, by the tenant for life.*"

In the further discussion, after repudiating the adaptability of the common law to this country, which is covered with forest, that clearing of it for cultivation, which is highly beneficial to the land, can be itself waste, he proceeds to say : "Whether it has been beneficial or injurious to him (the owner of the succeeding estate in fee), is a question of fact, which must depend on the relative proportion of the cleared to the woodland, on the comparative value or worthlessness of the trees destroyed, and on the ordinary use made of the trees in the part of the country where the land is situated."

Referring to the provision for the widow's support in the assignment of dower, he says, " such an use of the land as was necessary for that support, and as prudent proprietors were accustomed to make of their own, was deemed to have been intended in the provision, although the value of the estate might be somewhat impaired thereby.   We also hold," he continues, "that the turning out of exhausted lands is not waste."

In *Carr* v. *Carr*, 4 D. & B., 179, it was decided, that the widow might make turpentine from trees which her husband had opened in his life-time, and might box new pines, to make a crop not exceeding that he had made in his life-time upon the land.   So the widow may clear for cultivation as much of the land as a prudent owner of the fee would, and sell the timber cut in doing so.   *Davis* v. *Gilliam*, 5 Ired. Eq., 308.

If done with a due regard to the proportion of wood and cleared land, she may clear what is necessary for the enjoyment of the estate.   NASH, C. J., in *Lambeth* v. *Warner*, 2 Jones Eq., 165.

It will be seen, from these citations and references, that the charge of the Court pursues the course of the adjudications upon the law of waste, and adapts it to the different aspects of the facts as shown in the evidence. It thus, becomes us to abide by the law as declared and reiterated by the Courts since the beginning of the present century, and ruled substantially in the charge we are now considering.

The real and important inquiry is, has the land been abused during the defendant's occupancy by a spoliation unwarranted by the usage of prudent husbandmen in respect to their own property, to the impairment of it as a whole, in value; and to this point, no information seems to have been elicited, and no instruction to have been asked.

Those instructions and exceptions to the charge which are before us, relate to specific acts alleged to be waste, which, as the cases show, are not recognized as *per se* waste, and not applicable to the condition of this State.

We find no error in the directions given to the jury, and made the ground of exception in the appeal, which, without noticing each specifically, are all disposed of in what has been already said.

The case of *Dorsey* v. *Moore*, determined at this term, decides that trees severed by a life tenant, or by a stranger, from the land, unauthorized by law, and being waste, in its proper sense, by the act of separation become personal property, the title to which at once vests in the owner of the inheritance, and is not at variance with this opinion.

There is no error, and the judgment is affirmed.

No error.                                        Affirmed.