W. L. SHERRILL et al. v. MARY CONNOR.

*Waste—Liability of Life-tenant for Permissive Waste—Statute of Limitations—Permanent Improvements as a Set-off to Damages for Waste.*

1. Waste is a spoiling or destroying of the estate, with respect to buildings, wood or soil, to the lasting injury of the inheritance; but the acts done or permitted that constitute such injury differ according to the condition of the country.

2. The clearing of land by life-tenant is waste in England, but in this country it is left for the jury to say whether the life-tenant has dealt with the land in a husbandman-like manner and has observed the proportions of cleared and wood land as a prudent owner in fee would in the management of his own land.

3. A life-tenant is liable for permissive waste, under *The Code*, §§ 624 to 630, if, through his neglect or wantonness, permanent injury is done to the inheritance.

4. But where it appears that the husband of the tenant in dower, and the ancestor of the plaintiffs, died in 1866, before his farm was accommodated to the changed condition of the country, and left a farm containing about two thousand acres and lying in three counties, with barns and out-houses built, where the slaves engaged in the cultivation of the farm and the stock necessary for the support of the slaves and family were provided for and housed near his dwelling, the Courts will take notice of the change, and when tenement-houses dotted all over the farm are substituted for the negro cabins located near the dwelling, will leave the jury to determine whether a prudent owner of the fee would, under the circumstances, have incurred the expense of keeping in repair a barn used originally for the protection of stock needed for the whole farm: *Held,* that it was error, in such case, to instruct the jury that the tenant in dower was liable for permissive waste in suffering such barn to fall into decay.

5. It was error, in such a case, where damages were asked for the time elapsing from the year 1866 to 1885, when the action was brought, to instruct the jury that no statute of limitations applied.

6. Those of the plaintiffs who were not under disability were barred by the statute from recovering damages for waste permitted more than three years before the action was brought, but damages

might be estimated for the whole time from the allotment of dower for the purpose of using the damage as set-off against permanent improvements placed on the land by the life-tenant during the same period.

7. The jury could not allow damages for prospective waste, but damage can be assessed only up to the time of trial.

8. If the life-tenant should allow the inheritance to sustain further injury after the time of trial, damage may be recovered in another action.

This was a CIVIL ACTION, tried at the September Term, 1890, of the Superior Court of LINCOLN County, before *Brown, J.*

The complaint shows that Henry W. Connor, late a resident of said county of Lincoln, died in said county intestate on the 15th day of January, 1866, leaving the defendant Mary L. Connor, his widow, seized and possessed of a large amount of real estate, a part of which was duly allotted and set apart to said defendant, his widow, on her dower; that the plaintiffs, one of whom was a minor, are the reversioners, claiming under the will of H. W. Connor, deceased, defendant's husband at the time of his death; that the plantation, at the time the defendant became possessed thereof as aforesaid as her dower, was in good condition and repair, was very valuable, and was estimated by the jury who allotted it to her as dower, and was reasonably worth $25,000, and that the defendant has so negligently and wrongfully wasted and damaged the same, and permitted the same to become wasted and damaged, as hereinbefore alleged, and by cutting and destroying and carrying away valuable timber growing thereon, and by failing and neglecting to provide proper ditches and drainage of said land, and by her negligent and improper mode of cultivating the same, and by permitting and directing clearing original timbered land which was not needed for cultivation, and by negligently and wrongfully damaging destroying and permitting to be dam-

aged and destroyed the dwelling-house, out-houses and fences situated thereon, and by her negligent and willful failure to use the said plantation in a proper and prudent manner, the same has been thereby greatly and permanently injured, and the reversionary interests of the plaintiffs therein greatly and seriously damaged and reduced in value.

There was testimony tending to establish the facts alleged, and other testimony in rebuttal.

The other facts are set out in the opinion.

*Mr. John Devereux, Jr*, for plaintiffs.
*Mr. W. A. Hoke,* for defendant.

AVERY, J.: The defendant's first contention is that the Judge below erred in instructing the jury that she was liable for permissive waste. Waste is defined to be "a spoiling or destroying of the estate with respect to buildings, wood or soil, to the lasting injury of the inheritance." The statute of Marlbridge made the tenant in dower liable at common law for single damages, and that of Gloucester provided subsequently that he should forfeit the place wherein the waste was committed, and treble damages to him that had the inheritance. But we fail to find any express authority from the English Courts to sustain the view that a tenant in dower is generally answerable for permissive, as well as voluntary, waste, though our own text-writers maintain that all life-tenants are liable, like insurers, for all injuries to buildings, whether purposely done or negligently permitted, except such as is caused by act of God or the public enemy, or by consent of the reversioner. While the Courts of this country have generally adhered to the old definition of waste that we have already given, they have as uniformly maintained that what is permanent injury to the inheritance must, of necessity, depend often upon the circumstances attending a particular case, and that rules laid down in

England, for determining what acts constituted waste there, were not always applicable in a new country, where the same acts might prove beneficial, instead of detrimental, to the inheritance. GASTON, J., in *Shine* v. *Wilcox*, 1 Dev. & Bat. Eq., 631, says: "While our ancestors brought over to this country the principles of the common law, these were, nevertheless, accommodated to their new condition. It would have been absurd to hold that the clearing of the forest, so as to fit it for the habitation and use of man, was waste. * * * We also hold that the turning out of exhausted land is not waste" The Court, in that case, reached the conclusion that it was for the jury to determine whether, in clearing additional land or turning out that which had been exhausted, the tenant for life acted as a prudent owner in fee would have done, had he been cultivating the land for a support or for profit. Substantially the same reasoning is adopted in other cases decided before and since that opinion was delivered, here and in other States. *Sheppard* v. *Sheppard*, 2 Hay., 382; *Ballentine* v. *Poyner, ibid.*, 110; *Lambeth* v. *Warner*, 2 Jones Eq., 165; *Crawley* v. *Timberlake*, 2 Ired. Eq , 460; *Davis* v. *Gilliam*, 5 Ired. Eq., 308; *Dorsey* v. *Moore*, 100 N. C., 44; *Hastings* v. *Crankleton*, 3 Yeates, 261; *Clemence* v. *Steere*, 53 Am. Dec., 621; *Wilson* v. *Edwards*, 2 Foster (N. H.), 517; *Harvey* v. *Harvey*, 41 Vt., 373.

In *King* v. *Miller*, 99 N. C., 583, the Court approved the charge of the Judge below, in which he had said, in substance, that it must be left, in large measure, to the discretion of the jury to say whether the destruction of timber or giving up a cultivated field, and permitting bushes to grow and take possession of it, in the light of the evidence in the case, had proved a lasting injury to the inheritance. The late Chief Justice gave to the entire charge of the learned Judge who tried the case the unqualified approval of this Court, and reiterated the general proposition that "while, in its essential elements, waste is the same in this country and

in Engtand, being a spoil or destruction in houses, trees and the like, to the permanent injury of the inheritance, yet, in respect to acts *which constitute waste,* the rule that governs in a new and unopened land, covered largely with primeval growth, must be very different."

We have quoted the language used in these cases by this Court, not because the point decided was identical with that involved here, but to show that the true test for determining what is waste, voluntary or permissive, is ordinarily involved in the question, whether, in view of the evidence in a particular case, the act complained of was productive of permanent impairment of the value of the inheritance. In ascertaining whether a given act or omission falls within the rule, and subjects the tenant to liability, the condition of the land when dower was assigned should be compared with its state during the period for which damage is claimed.

It appears from a review of the pleadings and evidence that Connor, the husband of the defendant and the ancestor through whom plaintiffs claim the reversion, was the owner of a large number of slaves and an extensive body of land, lying in two or three counties, and that his dwelling-house was the headquarters or base of his farming operations, and the place where his slaves resided in cottages ranged around his house, and the horses and mules necessary to work the farm, and cattle, hogs and sheep necessary to furnish food for the family and slaves were kept. This Court can take notice of the fact that the barns formerly used at such establishments have often, if not generally, proven too large to be kept up by an owner who survived the war long enough to accommodate himself to, and arrange his business in relation to the changed condition as to labor and alterations in methods consequent upon emancipation. When it became necessary to build tenement-houses at suitable points for the accommodation of lessees of different sections of the estate, the negro cabin, the large

smoke-house for the storage of bacon, and the large barn for the protection of all the stock needed, possibly to operate the entire farm, were no longer useful, and were often torn down, or suffered to fall into decay, and were replaced by others of a size suited to the new state of affairs. If it was proper when our ancestors were transplanted in America to look to the reason of the common law, and hold that under different conditions, in an undeveloped country, the clearing of land by a life-tenant should no longer be held *per se* to amount to waste, without regard to its effect upon the interest of a reversioner, there are reasons equally as potent for leaving a jury with explicit instructions to determine whether a prudent owner of the fee, if in possession in lieu of the life-tenant, would have suffered the barn, or other building, unsuitable because of its great proportions, to his wants in the new state of society, to have fallen into decay rather than incur the cost of repair.

Upon this subject, the charge of his Honor was not sufficiently clear and specific, though it was, in the main, an elaborate and correct exposition of the law except as to this and one other point. The paragraph complained of was as follows: "It is the duty of the defendant to keep the barn and necessary and proper farm-houses and the residence-houses in an ordinary condition, and to repair them as much as is consistent with, and required by, the ordinary usage and care of such buildings. If the defendant sat by and permitted the roofs of the dwelling to rot, the barn to fall in, the out-houses to decay, etc., such negligence constitutes permissive waste, if thereby lasting injury is inflicted on the inheritance." Under this instruction, the jury must have inferred that the "barn, necessary out-houses and dwelling-house" must be kept, at all events, in "ordinary repair," even if it were such a gigantic structure that a prudent owner of the whole fee would not have kept it in repair. The qualification appended to the next sentence does not affect this sentence, and the words

"as much as is consistent with, and required by, the ordinary usage and care of such buildings," convey the idea that the repairs should have been of the kind usually made on such buildings, but that repairs to some extent must, in any event, have been made to the barn. The question whether the barn was such an one as a prudent owner in fee would have felt that he ought to keep up, in order to prevent permanent injury to the inheritance, was not passed upon by the jury.

In instructing the jury as to the amount of damage to be allowed for permissive waste, the Judge left them to infer that, in any view of the evidence, some damage must be assessed for the failure to keep in repair "said buildings," without distinguishing between them. The qualification that they must ascertain what *lasting damage* had accrued would not, and could not, lead the jury to the conclusion that, if it were good husbandry or wise economy to allow a barn too large for the altered conditions growing out of a revolution to go to decay and substitute a suitable one in its stead, the defendant was not liable on account of failure to repair the barn. The accountability of life-tenants for permissive waste must, in the most favorable view of the law, subject them to no little hardship; but we think that the same rule should be applied as in alleged voluntary waste by cultivating meadow-land, clearing woodland or in abandoning the cultivation of land already cleared. The jury should be left, with more specific instruction, to say whether the omission complained of caused lasting injury to the inheritance.

Subject to the qualification that we have stated, we think that, under the law now in force (*The Code*, §§ 624 to 630), a tenant in dower, or other life-tenant, who, by neglect or wantonness, occasions permanent waste or injury to the inheritance, whether voluntary or permissive, thereby subjects himself to liability to pay the actual damages, or treble damages, at the discretion of the Judge, and also to forfeit the place

wasted on a day to be fixed by the Judge, if she should meantime fail to pay the damage recovered of her. 4 Kent's Com , marg. p. 76; Minor's Inst., marg p. 543; 1 Washburn on R. P., marg. p. 257; Scribner on Dower, 744; 6 Lawson's Rights and Rem., § 2856; *Clemence* v. *Steere, supra; Wilson* v. *Edwards, supra; Harvey* v. *Harvey, supra.*

We think that his Honor erred when he told the jury that, on account of the continuous character of the injury, no statute of limitations applied to the permissive waste. While we find no direct authority upon the question, the general principles governing the assessment of damages, and the application of them in other analogous cases, lead us to a conclusion very different. If it be admitted (the demand being for the possession of the place wasted and damaged) that the action falls within the provision of section 267 (5) of *The Code*, still a recovery could only be had for the injury that may have arisen from want of repair up to the time of trial. When mulcted in damages by the verdict of a jury, a life-tenant is at liberty to pay the amount assessed, and provide against future liability by making repairs immediately. The jury cannot allow prospective damages, where the roof of a building has become decayed, for the value of the whole building, on the supposition that the tenant will suffer the decay to continue, till the structure shall have rotted and fallen down. The tenant is at liberty to replace the roof, and restore the building to its original condition, and if he does so the decay is arrested, and the accruing liability ceases. If he chooses to allow the building to be injured still further by his inattention, and the value of the inheritance is thereby diminished, damage may be recovered (which the Judge can increase three-fold) for the time elapsing since the former recovery in another action subsequently instituted.

We have held that a similar rule prevailed in the case of nuisances caused by flooding lands by water, and the prin-

ciple laid down by this Court is sustained by abundant authority. *Emery* v. *Railroad*, 102 N. C., 232; *Sherlock* v. *Railroad*, 115 Ind., 22; *Luther* v. *Winnisimmet Co.*, 9 Cush. (Mass.), 171; *Railway Co.* v. *Gilleland*, 94 Am. Dec., 97 (56 Penn. St., 445); Wood on Lim. of Actions, 371; Wood Mayne on Dam., 547.

It being apparent that, from the nature of the case, the liability for permissive waste to the same building may be the subject of separate actions, where it is continued after one recovery, we can see no reason why his Honor should not have limited the extent of the recovery by the plaintiffs, laboring under no disability, such as prevented the statute from running to three years before the action was brought. They had the right to bring an action and adjust liabilities at any time after dower was assigned in 1866. There would have been no greater inconvenience in ascertaining the exact status of a building at the time of assessment heretofore, if an action had been brought, than would arise should the plaintiffs, in future, find, on bringing another action, alleging that the defendant had suffered buildings to be injured still more for want of repair since the damage had been ascertained in this action.

But the jury would be at liberty to estimate the damage arising from permissive waste since the dower was first assigned for the purpose of a set-off against the value of permanent improvements placed on the land by the tenant in dower. If the damage for the time elapsing between the allotment of dower and the bringing of this action should exceed the value of such permanent improvement, the plaintiffs, who are not barred, would be entitled to their proportionate share of the excess, while the other plaintiffs would be barred as to their ratable shares.

There was error, for which a new trial must be granted.

Error.