RUFUS NORRIS v. JOHN· W. LAWS ET AL.

(Filed 5 May, 1909.)

1. Estates—Waste—Permanent Injury—Evidence.

In an action of waste for damages and forfeiture of the premises by the life tenant of lands, evidence that the life tenant was cutting and using valuable standing timber thereon, beyond the quantity necessary to properly keep up the estate or for his reasonable enjoyment as such tenant, and selling it or using it in a manner not to benefit 'the estate or in repairing houses thereon which he had permitted to fall into disrepair, is properly submitted to the jury upon the question as to whether the inheritance had been permanently injured, or whether, under the facts and circumstances of the particular case, the life tenant acted with the same care as a prudent owner of the fee in possession would have used.

2. Estates—Waste, Voluntary and Permissive—Definition.

Voluntary waste consists of some positive act of destruction; permissive waste, in the neglect or omission to do what will prevent injury to the estate or freehold.

3. Estates—Waste—Timber Lands—Comparative Value—Instructions—Facts Assumed.

In an action of waste, for the alleged cutting of timber by the life tenant, to the permanent injury of the inheritance, there was evidence upon the one hand tending to show that the land had improved in value by the cutting, and upon the other that the price of timber was getting higher and that the land was of greater value if not cleared: *Held*, it was error for the trial judge to charge the jury that they could consider the increased value of timber lands as compared with cleared lands in concluding whether clearing any part of the land was necessary, as such an instruction assumed as a fact that clearing the land had diminished its value, which was a question for the jury, under the conflicting evidence.

4. Estates—Waste—Timber Lands—Life Estate—Right of Life Tenant—Instructions.

The life tenant of lands has the right to make additional clearings thereof, if in the exercise of prudence and judgment it was required for his support and reasonable enjoyment of his estate; and an instruction is erroneous which makes this right to depend solely upon the value of timbered land as compared with the value of cleared land.

ACTION tried before *Neal, J.,* and a jury, at October Term, 1908, of WAKE.

This action was brought to recover damages for waste, alleged to have been committed by the defendant, Lovie Laws, upon the land described in the pleadings. There was evidence on the part of the plaintiff tending to show that in 1901 James Norris died, owning eighty-six acres of land and leaving a will, by which he devised ten acres to a nephew, subject to the control of testator's wife, Lovie Norris (now Lovie Laws), until said nephew should become of age. He was seventeen years of age at the time of the trial. James Norris devised another ten acres to his brother, subject to the life estate of his widow, and the remainder of the land, sixty-six acres, he devised to his wife, Lovie Norris, for life, and at her death to his father, Rufus Norris, the plaintiff in this action. The waste is alleged to have been committed upon the sixty-six acres of land. At the death of James Norris, in May, 1901, there were about twenty acres of land in cultivation, being a part of the sixty-six acres in which plaintiff had a remainder. The land and the buildings thereon, though old, were in fairly good condition. James Norris made a living for himself and wife on the place. The first year after his death the land was leased by his widow to her father-in-law, the present plaintiff, Rufus Norris, but on account of the heavy rains her tenant did not make much on the land and paid her very little rent. Afterward the *feme* defendant leased the land for a bale of cotton per annum, and thereafter worked for wages, until some two or three years later, when she was married to her codefendant, John W. Laws, since which time the defendants have been living upon the land of John W. Laws, which is about eight miles distant from the sixty-six acres of land above described. During the year 1906 the defendants began to cut and remove wood from a portion of the land, and sold the standing timber which was fit for saw logs to one J. H. Weaver, and thereafter cut the timber on ten or twelve acres of the land, making about thirty-two acres, in all, of open land, including two or three acres "turned out," or abandoned. The timber was cut from ten or twelve acres in one place and from four acres on another part of the land, some distance away, and the wood

was sold by the defendants. The wood so cut was not dead or fallen trees. The ten or twelve acres cleared were heavily timbered and were on a hillside near a branch. There was other land just as good, and perhaps better for farming purposes, being level, thinly timbered and adjoining the body of cleared land, which would require no diking. The land which was cleared by the defendants had to be diked to keep it from washing away, and was not a proper clearing for farming purposes, but was about the roughest part of the land. The defendants sold ten or twelve car loads of cord wood, which was cut on the premises and was worth about $20 a car, and 58,800 feet of lumber, worth about $2.50 per thousand feet. The timber or wood cut was in excess of what was necessary for farming purposes. The farm had not been properly cultivated since James Norris' death, until 1908. The land which was cleared at the time of Norris'- death, if it had been properly cultivated, would have supported the widow, who had no children; but since his death it has been injured by poor cultivation, and nothing has been done to restore fertility to the soil, though it was susceptible of improvement. Defendants cultivated a part of the cleared land, sublet a part and turned out about three acres as old field; the land thus turned out or abandoned being strong land. If the farm had been properly cultivated, there would have been no need of clearing any of the said land. The former owner, F. M. Norris, had lived and raised a large family on the place by farming, and there was sufficient land already open. The defendants allowed the buildings to fall into decay and the fences about the house to be destroyed. No repairs of any kind were made upon the premises until the spring of 1908, after this suit was brought. The proceeds of sale of wood and timber were used in improving the premises of the defendant John Laws, and none of it was used in repairs or improvements on the land in question. Defendants contended that this was not so. There was further evidence on the part of the plaintiff tending to show that cutting the wood and standing timber on the land permanently damaged the premises $200, and that the damage done the premises as a whole amounted to between $200 and $400. The *feme* defendant told the plaintiff that she intended to have

the timber while she was living, as she could not use it after she was dead. There was also evidence on the part of the plaintiff tending to show that the timber is now worth more than the land, and timbered lands more than cleared lands; that all lands, especially timbered lands, owing to the growing scarcity of timber in that vicinity, have greatly risen in value since James Norris' death—that is, from 50 to 150 per cent—and that a railroad was built shortly before his death and ran within a few hundred yards of the premises. The land was sold for taxes in the year 1905, and was not redeemed by the defendants until after notice from the plaintiff of their default.

There was evidence on the part of the defendants tending to show that the clearing was necessary for farm purposes and was done in good faith; that the land was not damaged thereby, but improved in value, and would rent for more than it did before; that the land was worth more than when James Norris died—as much as $200 or $300 more; that the clearing of the ten or twelve acres was in a proper place. The land was worn out and run down by bad methods of farming when James Norris died, and would not produce sufficient crops to support *feme* defendant, and the two or three acres turned out were worthless, worn-out and wet bottom lands. There was not enough cleared land for the reasonable support of the *feme* defendant. The buildings and stables have, since this suit was brought, been repaired by the defendants, and are now in as good condition as when Norris died. The crop of 1908 was the best which has been raised on the land since his death, and the farm will sell or rent for more than it would when he died; one witness testifying that it would rent for twice as much and sell for $300 or $400 more. The ten or twelve acres on which the timber was cut was cleared in the spring of 1908 and put into cultivation. It was not cultivated immediately after the timber was cut, because it would have required "grubbing," which was costly, and the defendants let the land lie idle for two years for the roots to rot, and then diked it, to prevent washing, and cultivated it.

The plaintiffs offered evidence tending to prove that the defendants did not intend to cultivate at all, but were cutting and

selling wood and timber and using the proceeds in making improvements on the land of the defendant John Laws, and that the claim that the defendants were clearing the lands for cultivation was an afterthought and first set up after the institution of this suit.

Exceptions taken by the defendants were to the charge of the court, which were as follows:

1. "If the jury shall find from the evidence that the *feme* defendant sold timber trees and used the proceeds of such sale, either cash or lumber, in improving other buildings than those on the premises, and neglected to repair the buildings on the premises described in the complaint, this is waste.

2. "If the *feme* defendant had firewood or timber cut on the premises, or allowed it to be cut in excess of what was necessary for farm purposes, and sold the same for profit, it is waste, unless the wood or timber cut and disposed of was from dead or fallen trees.

3. "It is the province of the jury, and it is their duty, to consider the changed conditions as to the greatly increased value of timber and timber lands in proportion to cleared or farm lands in arriving at a conclusion as to the necessity for clearing any part of the premises. The jury should also consider the growing scarcity of timber and wood and its increasing value; also the improved methods of farming, the improved methods of improving the fertility of "old fields" and lands depleted of fertility by long cultivation, in arriving at a conclusion as to what was a proper use of the premises; also, in arriving at a conclusion, the character of the cultivation of said lands since the life estate of the *feme* defendant vested in her, and whether the same was such as an ordinarily prudent owner of the fee would have used in its cultivation; for exhausting the land by improper tillage is waste.

4. "If the life tenant, Lovie Laws, negligently allowed the premises to fall into decay, it would be waste; and this is so, even though there was no timber on the place suitable for the purpose of repairing buildings thereon.

5. "It is left to you, gentlemen of the jury, to say whether in your 'discretion' the destruction of the timber or giving up a cultivated field, in the light of all of the evidence in the case, had proved a lasting injury to the inheritance.

6. "The defendants would not be liable for mere error in judgment, provided they acted in a prudent manner, exercising that usual good judgment that would be exercised by the ordinarily prudent person under similar circumstances and surroundings; and, touching the question of permitting the buildings to decay and go to waste, the question is as to whether the condition of the buildings was such that a prudent owner of the fee would have felt that he ought to repair and keep them up in order to prevent permanent injury to the inheritance."

The defendants in apt time excepted to each of the instructions given by the court.

The following issues were submitted to the jury:

1. "Did defendants commit waste upon the lands in which plaintiff has a remainder?

2. "If so, what are plaintiff's damages?"

The jury returned as their verdict that the defendants had committed waste upon the premises, and assessed the plaintiff's damages. Judgment was entered upon the verdict for the damages assessed and the forfeiture of the premises, whereupon the defendants appealed.

*B. C. Beckwith* for plaintiff.
*J. H. Pou* for defendants.

Walker, J., after stating the case: The accepted definition of "waste" is a spoil or destruction, done or permitted with respect to lands, houses, gardens, trees or other corporeal hereditaments, by the tenant thereof, to the prejudice of him in reversion or remainder or, in other words, to the lasting injury of the inheritance. 2 Blk. Com., 281. Voluntary waste is active or positive, and consists in some act of destruction or devastation. Permissive waste is such as is merely permitted by the tenant, and consists in the neglect or omission to do what will prevent injury to the estate or freehold, as, for example, to suffer a house to become decayed for want of proper repair.

Black's Dict., p. 1236, and authorities cited. The plaintiff alleges that the inheritance, or remainder, belonging to him has been damaged by both kinds of waste committed and permitted by the defendants upon the premises in question. We have held that what is a permanent injury to the inheritance must often depend upon the facts and circumstances of the particular case under consideration, and the jury must determine, under proper instructions from the court, whether the tenant for life, in what he has done or omitted to do, has acted with the same care as a prudent owner of the fee would have exercised if he had been in possession, cultivating and using the land for a support or for profit. *Shine v. Wilcox,* 21 N. C., 631; *King v. Miller,* 99 N. C., 583, and *Sherrill v. Connor,* 107 N. C., 630, and other authorities therein cited. The charge, in many respects, is sustained by the authorities we have cited, but in one respect the court committed an error. The jury were instructed as follows: "It is the province of the jury, and it is their duty, to consider the changed conditions as to the greatly increased value of timber and timber lands in proportion to (as compared with) cleared or farm lands in arriving at a conclusion as to the necessity for clearing any part of the premises." In this and other parts of the instruction the court assumed that facts had been established about which the testimony was conflicting. There was evidence that, instead of diminishing the value of the land, the cutting of the timber and clearing the land had enhanced it, and also evidence that cleared land had risen in value more than timbered land. It was misleading, therefore, to assume the contrary to be true, and upon that assumption to base an instruction to the jury which might control them in rendering their verdict. That the error was a material and prejudicial one cannot admit of a doubt. The instruction was erroneous in another respect: The right of the tenant for life to clear land sufficient for her support and a reasonable enjoyment of her estate cannot be made to depend solely upon the value of the timbered land as compared with the value of cleared land, because, if this were true, the tenant for life could not clear any land, or not a sufficient quantity for her support, if the timber cut from it or the land with the timber standing upon it is more

valuable than the land would be when cleared. She would have no right, at least ordinarily, to cut the timber merely for the purpose of selling it, as is held in the cases we have cited; and if this cannot be done and there is not sufficient land already cleared for her support, she could not use the land at all, but must let the trees stand and continue to grow for the benefit of the reversioner, or remainderman, if the timbered land is more valuable than if it were cleared. It is very true that there should be a due or proper proportion between timbered and cleared land—such, it is said, as a prudent husbandman would maintain in the use and management of the premises. But this is far from saying that the relative value of timbered and cleared land determines the right of the tenant for life to make additional clearing if, in the exercise of prudence and judgment, it was required for her support and the reasonable enjoyment of her estate. The standard by which the conduct of the life tenant is to be gauged, or the test as to whether waste has been committed or not, is that stated in *Sherrill v. Connor* (which we now approve) and the cases therein cited. It is the rule of the prudent husbandman and what he would do, under the circumstances, if owner of the fee. This is quite strict enough in its application, and the life tenant should not be held to too rigid an accountability. *Judge Gaston,* in *Shine v. Wilcox, supra,* said it will not do to hold that the clearing of the forest so as to fit it for the habitation and use of man is waste, and, we add, whether it is or not must depend upon the peculiar facts of any given case, and the finding of the jury thereon, when properly directed by the court, under the rule of law we have laid down and which has been generally adopted by the courts.

The question presented in this case was not confined alone to the relative value of timbered and cleared land, but the jury should have been so instructed as to ascertain the general result in respect to whether there had been a lasting injury to the inheritance and especially as to how much land the plaintiff was entitled to clear for her reasonable support in the exercise of that degree of prudence which the careful husbandman would observe in the cultivation and management of the land. It is true that the jury may consider all the facts and circumstances

of the case in order to reach a just conclusion, and, among others, the value of timbered and of cleared land may be considered for the purpose of determining whether the clearing had been done in a prudent manner; but we think the instruction which we have quoted was too broad and was calculated to mislead the jury in passing upon the respective rights of the parties. This error was not corrected by any other instruction given by the court. His Honor finally brought the case to the true test in his concluding instruction, but it did not reach and remove the error we have pointed out. The question as to whether timbered land was more valuable than cleared land should have been left to the jury for their determination upon the conflicting testimony, without any assumption of the fact that timbered land was the more valuable. This was not an incurable error, but it was not corrected by anything said by the court in the other parts of the charge. Other errors are assigned, but it is not necessary to discuss them, as the questions raised by these assignments may not again be presented. The case must be submitted to another jury, with proper instructions of the court upon the issues and evidence.

New Trial.

CLARK, C. J., dissenting: The charge called in question was an instruction to the jury that they could "consider the changed conditions as to the greatly increased value of timber and timber lands in proportion to cleared or farm lands in arriving at a conclusion as to the necessity for clearing any part of the premises. The jury should also consider the growing scarcity of timber and its increasing value; also the improved methods of farming, the improved methods of improving the fertility of 'old field' and land depleted of fertility by long cultivation, in arriving at a conclusion as to what was a proper use of the premises; also, in arriving at a conclusion, the character of the cultivation of said lands since the life estate of the *feme* defendant vested in her, and whether the same was such as an ordinarily prudent owner of the fee would have used in its cultivation."

It is difficult to see how the judge erred in so charging. He did not assume any facts in regard to which there was conflicting

evidence, nor did he make the reasonable enjoyment of the life estate "depend solely" upon the relative value of timbered and arable land. The learned judge simply placed before the jury for them to *"consider"* the surrounding and attendant circumstances as the jury might find them to be, with the object in view of finding whether or not the conduct of the life tenant was "such as an ordinarily prudent owner of the fee would have used." This conforms to the rule laid down in *Sherrill v. Connor,* 107 N. C., 630. What in one age or community, under the recognized conditions of agriculture, would not be waste, because such as a prudent owner would do with his own, might be waste in another age or in another community, under changed conditions, because no ordinarily prudent owner would so act. The fact is eminently one for a jury to pass upon.

It would seem that the charge was unobjectionable and there was no error for which a new trial should be awarded.

HOKE, J., concurs in this dissent.